# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### WESTERN DIVISION

TAIT AND JENNIFER IVERSON    )
    )
        **Plaintiffs**    )
    )
**vs.**    )
    )    **Case No. 1:09CV221-DD**
WILBUR COLOM, DELTA HILLS    )
HOUSING DEVELOPMENT, LLC,    )
HILBERT WILLIAMS, HILBERT    )
WILLIAMS d/b/a CRYE-LEIKE    )
PROPERTIES, UNLIMITED, KIM    )
DAVIS, BANCORPSOUTH BANK,    )
AND JOHN DOES 1-5    )
    )
        **Defendants**    )

## <u>ORDER</u>

Defendants Kim Davis and Hilbert Williams d/b/a Crye–Leike Properties Unlimited (Crye-Leike) have filed a motion to compel arbitration of the claims asserted against them in this lawsuit. Plaintiffs Tait and Jennifer Iverson have responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted. The court further concludes that a motion to dismiss for lack of jurisdiction filed by defendant Wilbur Colom should be denied.

This is a fraud action in which plaintiffs seek recovery against defendant Colom, as well as two Crye-Leike realtors, for fraudulent representations allegedly made in conjunction with the November 2008 purchase of a house by plaintiffs. The house was originally owned by Colom and defendant Delta Hills Housing Development, LLC, a real estate company which was partly owned by Colom. The husband and wife plaintiffs were represented in the real estate transaction by defendant Kim Davis, who, like Williams, is a Crye-Leike agent. Williams actually owned

the Crye Leike franchise, and he represented Colom in the transaction.

At the time of the transaction, the plaintiffs were living overseas while Tait was serving in the Air Force. After learning that Tait would be transferred to Columbus Air Force base, the couple began searching for a home in West Point, Mississippi. Plaintiffs allege in their complaint that the "defendants" took advantage of the fact that they were overseas and unable to inspect properties by foisting a seriously defective house upon them. Plaintiffs contend that, contrary to assurances in the seller's disclosure statement, the house sold to them had been damaged twice by fire, that its roof was in poor condition, and that it was not connected to a public sewer system. Plaintiffs further assert that the agent defendants actively discouraged them from having an independent inspector examine the house. Upon moving into the house, the plaintiffs noticed the aforementioned flaws (among others) and subsequently filed the instant action in this court.

Before considering the arbitration issues, the court will address a motion filed by Colom to dismiss this case for lack of diversity jurisdiction. In his motion, Colom argues that, while the complaint alleges that plaintiffs are Texas and Georgia residents, the plaintiffs filed a January 2009 application for Mississippi homestead exemption which asserted that they were Mississippi residents. Plaintiffs counter this argument by asserting that their "homestead exemption application was denied because the Iversons *were not* residents of the State of Mississippi." Plaintiffs further argue that Colom must have found the denial of the homestead exemption application at the same time that he found the application and that he is being less than candid with the court by only telling part of the story.

Plaintiffs also cite federal authority holding that Tait is legally presumed to have retained his Texas residency status for diversity purposes, since he was domiciled in that state at the time

of his enlistment in the Air Force. In *Codagnone v. Perrin*, 351 F.Supp. 1126, 1129 (D.C.R.I. 1972), a Rhode Island district court wrote as follows:

> "It is settled that federal jurisdiction, under the diversity clause, rests on the domicile of the parties at the time of the commencement of the action and not on the place where they may ... live or dwell temporarily." *Miller v. Lee*, 241 F.Supp. 19 (D.S.C. 1965). In the case of a serviceman, there is a presumption that he retains the domicile which he had at the time of enlistment and the evidence to sustain a change of domicile to the place where he may be stationed must be "clear and unequivocal." *Bowman v. DuBose*, 267 F. Supp. 312 (D.S.C.1967).

Colom has not rebutted this authority in his reply brief, and the court therefore agrees with plaintiffs that an (apparently) unsuccessful application for homestead exemption is insufficient evidence to support the dismissal sought by Colom. The motion to dismiss for lack of jurisdiction will therefore be denied.

Turning to the arbitration issues, the court concludes that, while plaintiffs may well have viable fraud claims in this case, they clearly did agree to arbitrate their claims against the agent defendants. The agent defendants have submitted an October 20, 2008 document entitled "Mandatory Arbitration Addendum - Brokers and Agents" which provides in pertinent part as follows:

### Matters to be Submitted to Arbitration

All disputes and controversies of every kind and nature arising out of an in connection with the real estate transaction as against the Listing Broker, the Selling Broker (if any) and/or their agents or representatives shall be submitted to arbitration pursuant to the procedure set forth in this agreement.

### Procedure and Venue

Matters to be arbitrated under this agreement shall be resolved by arbitration administered by the American Arbitration Association in accordance with its arbitration rules, policies and procedures, and in accordance with applicable provisions of Mississippi law, including Miss. Code Ann. Section 11-51-1 *et seq*.

In the court's view, this document, which bears the signature of the plaintiffs, clearly and

unequivocally binds them to arbitrate their claims against the agent defendants.

In arguing that the arbitration provision in unenforceable, plaintiffs rely upon now-familiar arguments that the provision is substantively or procedurally unconscionable. A plaintiff may demonstrate that an arbitration provision is procedurally unconscionable by showing "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 714 (Miss. 2002). "Substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive." *Id.* The terms of the agreement strike the court as being very straightforward and easy to understand, and there is nothing about the size of the type or the layout of the document which should leave the reader in any doubt regarding its meaning. Moreover, the arbitration addendum was mailed to the plaintiffs while they were overseas, and they were accordingly given an opportunity to study it at their leisure prior to signing it. Finally, the court does not agree that the procedural rules of the American Arbitration Association are so onerous as to render the agreement unconscionable.

Considering the weakness of their arguments against arbitration, it is unsurprising that the plaintiffs would seek to emphasize their comparatively strong (if proven true) allegations of fraud in the underlying real estate transaction. Federal law is clear, however, that the court may not even consider these arguments since they are properly a matter for the arbitrator. In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) the Supreme Court stated that:

> [I]f the claim is fraud in the inducement of the arbitration clause itself-an issue which goes to the "making" of the agreement to arbitrate-the federal court may proceed to adjudicate it. But the [Federal Arbitration Act's] statutory language does not permit the federal court to consider claims of fraud in the inducement of

4

the contract generally.

Plaintiffs acknowledge in their brief that "[t]he instant suit seeks rescission of the Real Estate Contract, including the Mandatory Arbitration Addendum, on the grounds that the Contract, as well as the Addendum, were procured by fraud." [Brief at 8]. Plaintiffs later reaffirm that they "have asserted and established fraud in the inducement of the contract as a whole." [Id.] Given these admissions, it is difficult to imagine a case which falls more squarely within *Prima Paint*'s holding than this one. In arguing otherwise, plaintiffs cite *Covenant Health & Rehabilitation of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So.3d 695, 707 (Miss. 2009) for the proposition that "arbitrability should be decided by courts, not arbitrators." Plaintiffs take this statement out of context, since the Mississippi Supreme Court was merely quoting the U.S. Supreme Court's 1986 decision in *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648, 655 (1986), which arose in a different context and clearly did not overrule *Prima Paint*. Indeed, the Fifth Circuit has repeatedly applied *Prima Paint*'s holding in the years following the *AT&T* decision, and it is apparent that *Prima Paint* remains good law today.

Plaintiffs' final argument against the enforceability of the arbitration provision is that, since its terms only apply to the agent defendants, the plaintiffs would be required to maintain one action in this court against Colom while pursuing arbitration against the real estate agents. In this circuit, the judicial economy concerns raised by plaintiffs are generally addressed by the Fifth Circuit's 2000 decision in *Grigson v. Creative Artists Agency, LLC,* 210 F.3d 524, 526 (5th Cir. 2000). The Fifth Circuit held in *Grigson* that even non-signatories to an arbitration agreement may compel arbitration under its provisions under an equitable estoppel theory, where the plaintiff raises "allegations of substantially interdependent and concerted misconduct by both

the nonsignatory and one or more of the signatories to the contract." *Id.*

This court frequently sees motions to compel arbitration in cases where, as here, there is an arbitration provision which only applies on its terms to one out of multiple defendants. Typically, however, the remaining defendants move to compel arbitration under *Grigson*, and these motions are generally granted in cases where, as here, concerted misconduct is alleged. *See, e.g. Shelley v. Coldwell Banker Real Estate Corp.*, 2006 WL 1313825 (N.D. Miss. 2006). Indeed, the Fifth Circuit recently endorsed this court's application of *Grigson* in a case bearing some similarity to this one. *Griffin v. ABN Amro Mortg. Group Inc.*, 2010 WL 1976575 (5th Cir. 2010). The plaintiffs in this case clearly allege concerted wrongdoing among the seller and agent defendants in their complaint, such as their allegation that:

> Sellers and the Crye-Leike defendants knew that if the true condition of the West Point house was known to the Iversons, the Iversons would not purchase the West Point house and the sales price, and the commissions, respectively, would be lost to them.

There are many other instances in which concerted wrongdoing on the part of "defendants" is alleged in the complaint, and *Grigson* thus appears to be directly on point in this case.

Colom has joined in the agents' motion to compel arbitration, and he has thus indicated his desire to have the claims against him arbitrated. Given that Colom did not specifically raise *Grigson* (or any other arguments) in his joinder, however, the court will refrain from compelling arbitration of the claims against him until plaintiffs have been given the opportunity, if they so desire, to demonstrate that *Grigson* is inapplicable. Plaintiffs appear to assert in their brief that arbitrating all of their claims would be preferable to pursuing two separate actions in court and in arbitration. The court therefore submits that the parties would be well advised to come to an agreement regarding the arbitration of all the claims in this case. This will permit plaintiffs to concentrate on proving the merits of their claims in arbitration, rather than litigating arbitration

issues.  Regardless, the court will, at this juncture, simply grant the motion to compel arbitration filed by the agent defendants and defer any ruling on the arbitrability of the claims against Colom until plaintiffs have been given an opportunity to brief the *Grigson* issues in this case.

In light of the foregoing, it is ordered that Colom's motion to dismiss for lack of jurisdiction is denied, and the agent defendant's motion to compel arbitration of the claims against them is granted.  Plaintiffs shall have fourteen days from this court's order to show cause why the claims asserted against Colom should not likewise be sent to arbitration under *Grigson*.

SO ORDERED, this the 30th day of September, 2010.


**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**